<pre>
 1                    UNITED STATES DISTRICT COURT
 2                     DISTRICT OF CONNECTICUT
       _____ |
 3                                     |
       UNITED STATES OF AMERICA,       | No. 3:21-cr-0187-OAW-1
 4                    Plaintiff,       |
       v.                              | December 21, 2021
 5     NATWEST MARKETS, PLC,           |
                      Defendant.       | 10:03 a.m.
 6     _____  |
                                       Abraham A. Ribicoff
 7                                     Federal Building
                                       450 Main Street
 8                                     Hartford, CT 06103

 9            WAIVER, PLEA AND SENTENCING HEARING
              (via Zoom Videoconference Platform)
10
       B E F O R E:
11         THE HONORABLE OMAR A. WILLIAMS, U.S.D.J.

12     A P P E A R A N C E S:
       For the Plaintiff:
13
              JONATHAN N. FRANCIS, ESQ.
14            U.S. Attorney's Office – New Haven
              157 Church Street, 25th Floor
15            New Haven, CT 06510
              (203)821-2700
16            Email: jonathan.francis@usdoj.gov

17     For the Defendant:
              BOYD M. JOHNSON, III, ESQ.
18            BONNIE HEIPLE, ESQ.
              THERESA TITOLO, ESQ.
19            WilmerHale
              7 World Trade Center
20            New York, NY 10007
              (212)295-6490
21            Email: boyd.johnson@wilmerhale.com
                     bonnie.heiple@wilmerhale.com
22                   theresa.titolo@wilmerhale.com

23     Also Present:  Snigdha Mamillapalli, Law Clerk
                      Avi Perry, Esq. DOJ-Crm
24     Courtroom Deputy:              Court Reporter:
       Jazmin Perez                   Cassie Zayas, RPR
25              Chambers: (860)240-2607
</pre>

```
 1                 (Call to order, 10:03 a.m.)

 2            THE COURT:  Good morning again.  My name is

 3    Omar Williams.  We're here on United States of America v.

 4    NatWest Markets PLC, currently pending in the District of

 5    Connecticut, Docket Number 21-cr-187.

 6            Can we start off with the appearances of counsel,

 7    please, for the record; and will counsel please identify

 8    anyone else who might be seated with you at counsel table,

 9    please.

10            MR. FRANCIS:  Good morning, Your Honor.  For the

11    Government, Jonathan Francis from the U.S. Attorney's

12    Office in Connecticut.

13            Also on Zoom, although not physically with me,

14    from Washington, D.C. is my colleague from the fraud

15    section, Avi Perry.

16            MR. PERRY:  Good morning.

17            MR. JOHNSON:  We -- it's Boyd Johnson from

18    WilmerHale, Your Honor.

19            My -- my colleagues are here from WilmerHale on

20    this as well:  Theresa Titolo and Bonnie Heiple.  With us

21    also is James Esposito, the corporate representative,

22    general counsel from NatWest Markets PLC.

23            And my colleague was going to move my admission,

24    and my partner, Theresa Cotolla's, to the Court pro hac

25    vice.  So maybe I should hand it off to my colleague.
```

```
 1              THE COURT:  Thank you.

 2          MS. HEIPLE:  Good morning, Your Honor.

 3  Bonnie Heiple from WilmerHale on behalf of NatWest Markets

 4  PLC.  We have two applications for admission as visiting

 5  attorney to represent NatWest Markets in this matter.

 6              The first is for Boyd Johnson, from whom you just

 7  heard; the second is for my colleague, Theresa Titolo.

 8  We've submitted copies of the papers to your clerk and

 9  we'll file them immediately following this hearing, and

10  respectfully request the Court grant these applications for

11  admission.

12          THE COURT:  Thank you, Attorney Heiple.  Thank

13  you to all counsel.  The Court has reviewed those documents

14  as provided earlier, and the Court does grant the

15  appearance of all counsel.  Thank you very much.

16          MS. HEIPLE:  Thank you.

17          THE COURT:  The Court additionally notes that the

18  United States Probation Office was notified of today's

19  hearing, and their presence has been excused by the Court

20  given the nature of today's proceeding.

21              Does either party object to their absence at this

22  time?

23          MR. FRANCIS:  No, Your Honor.

24          MR. JOHNSON:  No, Your Honor.

25          THE COURT:  Thank you very much.  The Court notes
```

 1  for the record that U.S. Probation Officer Otto Rothi,

 2  R-O-T-H-I, confirmed such notice by email this morning.

 3          Before we begin, the Court notes that we're

 4  conducting this proceeding by videoconference rather than

 5  in person, under the authority given by Section 15002(b)(2)

 6  of the CARES Act during the current global pandemic caused

 7  by the Coronavirus, COVID-19.  The Court finds that the

 8  current Department of Public Health and Safety precludes

 9  doing today's proceeding fully in person, but the interest

10  of justice makes it necessary to proceed by a remote

11  conference.

12          Do the parties consent to proceeding by

13  videoconference at this time, please?

14          MR. FRANCIS:  No objection from the government.

15          MR. JOHNSON:  No objection, Your Honor.

16          THE COURT:  All right.  Thank you very much.

17          By way of introduction, Mr. Francis, I understand

18  the purpose of today's proceeding is to waive indictment,

19  to accept a guilty plea, and to conduct a sentencing, all

20  today.  Is that correct, please?

21          MR. FRANCIS:  That is, Your Honor.

22          THE COURT:  Thank you.  Mr. Francis, has the

23  defendant provided the government with a corporate

24  resolution, indicating that Mr. Esposito has the authority

25  to waive the indictment, to provide a factual basis for the

 1  guilty plea, to enter a guilty plea, and to proceed with

 2  sentencing, all on behalf of the defendant?

 3          MR. FRANCIS:  It has, and that's Attachment B to

 4  the parties' plea agreement.

 5          THE COURT:  The Court has received and reviewed

 6  that as well.

 7          And Mr. Esposito, the first thing I'd like to

 8  tell you is to please take your time during this

 9  proceeding.  I'm in no rush.  I want to make sure that you

10  as a representative of your company completely understand

11  what you're doing today.  I know it's difficult because

12  we're here physically in the courtroom.  And so, I have my

13  mask on for distancing purposes, but if there's anything

14  you need me to repeat, I'm happy to do so.

15          If people wish to ask the Court to remove its

16  mask for inability to hear or to make a record, please let

17  me know.

18          Basically, I don't want to go so quickly that I

19  make a mistake or that I cause you to miss anything, but

20  I'll also try to avoid going too slowly so that your mind

21  wanders.  So if there's anything you need corrected, if you

22  need it repeated, please don't hesitate to stop and let me

23  know, okay?

24          THE DEFENDANT:  Good morning, Your Honor.  Thank

25  you very much.  Understood, and I absolutely will do that

```
 1   along the way.
 2              THE COURT:  Thank you so much.  All right.
 3              Similarly, if at any time during this proceeding
 4   you have any questions or any problems at all, please let
 5   me know.  If you need any time to confer with counsel for
 6   any reason, please let me know and I'll give you all the
 7   time that you need.
 8              Do you understand?
 9              THE DEFENDANT:  I do understand, thank you.
10              THE COURT:  Thank you so much.  All right.  So I
11   guess I'll start with swearing in the defendant.
12              Mr. Esposito, before the Court accepts your
13   waiver of indictment and guilty plea on behalf of your
14   company, there's several questions I have to ask you while
15   you are under oath to assure the Court that the plea is
16   valid.  For the purposes of today's proceeding, your
17   answers to my questions and your statements on the record
18   will be attributed to the corporate defendant, NatWest
19   Markets PLC, unless you indicate otherwise on the record.
20              Do you understand?
21              THE DEFENDANT:  I do understand.
22              THE COURT:  And Madam Courtroom Deputy,
23   Ms. Perez, would you please place Mr. Esposito under oath
24   at this time?
25              (Defendant sworn.)
```

1          THE DEFENDANT:  I do.

2          THE COURTROOM DEPUTY:  Thank you.

3          THE COURT:  Thank you so much.  For the record,

4    I'm going to advise Mr. Esposito of the rights which he may

5    exercise on behalf of Natwest.

6          Those include the right to remain silent.  If

7    that right is abandoned, the right at any time to stop

8    giving a statement, the right to counsel at every stage of

9    these proceedings, the right to have counsel appointed if

10   you cannot afford to hire counsel, the right to an

11   attorney-client privilege with the company's counsel.

12          And Mr. Esposito, do you understand these rights?

13          THE DEFENDANT:  I do understand.

14          THE COURT:  And Mr. Esposito, having been sworn

15   to tell the truth, do you understand that you and/or your

16   company will be subject to the penalties for perjury or for

17   making a false statement if you do not answer truthfully?

18          THE DEFENDANT:  Yes, I do.

19          THE COURT:  Additionally, do you understand that

20   if the government chooses to prosecute you and/or your

21   company for perjury or for making a false statement, it can

22   use any statement that you give under oath against you

23   and/or your company?

24          Do you understand that, sir?

25          THE DEFENDANT:  Yes, I do.

```
 1              THE COURT:  All right.  Now, would you please
 2   start off by stating your full name?
 3              THE DEFENDANT:  My full name is James, M., as in
 4   Michael, Esposito, E-S-P-O-S-I-T-O.
 5              THE COURT:  Thank you, sir.  Have you ever used
 6   any other names?
 7              THE DEFENDANT:  I have not.
 8              THE COURT:  Would you please state your date of
 9   birth?
10              THE DEFENDANT:  It's April 25, 1966.
11              THE COURT:  Where were you born, please?
12              THE DEFENDANT:  I was born in the Bronx, New
13   York.
14              THE COURT:  All right.  Have you ever lived
15   outside of the United States?
16              THE DEFENDANT:  I have not.
17              THE COURT:  Okay.  And you're a citizen of the
18   United States?
19              THE DEFENDANT:  I am.
20              THE COURT:  Would you please summarize your
21   education?
22              THE DEFENDANT:  Sure.  For high school, I
23   attended Fordham Preparatory School in Bronx, New York.  I
24   then went on to Georgetown University in Washington, D.C.,
25   and then I attended law school at Fordham University.
```

```
 1                    THE COURT:  Thank you.  Are you presently or have

 2     you been recently under the care of a physician,

 3     psychiatrist, social worker, or counselor?

 4                    THE DEFENDANT:  No, I have not.

 5                    THE COURT:  In the past 48 hours, have you

 6     consumed any alcoholic beverages or have you taken any

 7     narcotic drugs, medicine, or pills?

 8                    THE DEFENDANT:  No, sir.

 9                    THE COURT:  Have you ever been hospitalized or

10     treated for alcoholism or drug addiction?

11                    THE DEFENDANT:  I have not.

12                    THE COURT:  Are you able to think clearly today?

13                    THE DEFENDANT:  I am.

14                    THE COURT:  Do you understand what's presently

15     happening in this courtroom today?

16                    THE DEFENDANT:  I do understand.

17                    THE COURT:  And Mr. Johnson, have you had any

18     difficulty in communicating with your client or any of its

19     representatives?

20                    MR. JOHNSON:  No, Your Honor.

21                    THE COURT:  Have you discussed this case with

22     your client?

23                    MR. JOHNSON:  Yes, Your Honor.

24                    THE COURT:  Do you believe that

25     Mr. Esposito understands the rights that he will be waiving
```

1    for NatWest by waiving indictment and by pleading guilty

2    today?

3              MR. JOHNSON:  I do.

4              THE COURT:  Do you believe that Mr. Esposito is

5    capable of understanding the nature of these proceedings?

6              MR. JOHNSON:  I do.

7              THE COURT:  Do you have any doubt as to

8    Mr. Esposito's confidence to waive the indictment and plead

9    guilty at this time?

10             MR. JOHNSON:  No, Your Honor.

11             THE COURT:  All right.  Thank you very much.

12             And moving back to Mr. Esposito:  Are you

13   satisfied with your legal representation from Attorney

14   Johnson and by the lawyers for the defense?

15             THE DEFENDANT:  I am.

16             THE COURT:  Have you had enough time to discuss

17   this case with your company's lawyers?

18             THE DEFENDANT:  Sorry.  With the company or the

19   external lawyers, I've had ample time to have those

20   discussions both externally as well as internally within

21   NatWest Markets.

22             THE COURT:  Thank you very much.  And I'm sorry

23   for the -- some of the clumsy nature of the standard

24   questions in this situation.  So thank you.

25             Moving on to the waiver of the indictment,

1  Mr. Esposito.  As you know, NatWest has a constitutional

2  right to be charged by an indictment of a Grand Jury.  But

3  if you waive that right and consent to be charged by

4  information of the United States Attorney instead of an

5  indictment, the felony charges against your company have

6  been brought by the U.S. Attorney by the filing of an

7  information.

8          And unless the company waives indictment, it may

9  not be charged with a felony unless the Grand Jury finds by

10  a return of an indictment that there's probable cause to

11  believe that a crime has been committed, and that NatWest

12  has committed such a crime.

13          A Grand Jury is composed of at least 16 and not

14  more than 23 persons, and at least 12 grand jurors.  Before

15  NatWest could be indicted, the Grand Jury must find that

16  there was probable cause to believe that the company

17  committed the crime or the crimes with which it is charged.

18          And if NatWest waives indictment by the Grand

19  Jury, the case will proceed against the company on the U.S.

20  Attorney's information, just as though it had been

21  indicted.

22          So, Mr. Esposito, have you and NatWest and other

23  representatives discussed waiving your company's right to

24  indictment by the Grand Jury with your attorney?

25          THE DEFENDANT:  Yes, we have.

 1                    THE COURT:  And do you understand your company's

 2    right to indictment by a Grand Jury?

 3                    THE DEFENDANT:  I do.

 4                    THE COURT:  Are you authorized to waive

 5    indictment on behalf of NatWest?

 6                    THE DEFENDANT:  I am authorized, yes.

 7                    THE COURT:  Have any threats or promises been

 8    made to induce you to waive indictment on behalf of your

 9    company?

10                    THE DEFENDANT:  No, they have not.

11                    THE COURT:  And do you wish to waive NatWest's

12    right to indictment by a Grand Jury?

13                    THE DEFENDANT:  I do.

14                    THE COURT:  Mr. Johnson, is there any reason that

15    the defendant should not waive his right to the indictment?

16                    MR. JOHNSON:  No, Your Honor.

17                    THE COURT:  Okay.  Now, with respect to the form.

18    Is that waiver form being signed on the record or just --

19    do the parties just wish to have the oral waiver?

20                    MR. JOHNSON:  The latter, Your Honor.  The

21    form -- we discussed it with the government.  The form

22    doesn't seem to suit this corporate context, but I'll

23    obviously defer to the government if they have a different

24    view.

25                    MR. FRANCIS:  I agree with Mr. Johnson.  I think

1    Your Honor's canvass of Mr. Esposito just now was

2    sufficient.

3            THE COURT:  Okay, thank you very much.  Okay.

4    Now, does the government know of any reason that the Court

5    should not accept a waiver at this time?

6            MR. FRANCIS:  It does not.

7            THE COURT:  All right.  Thank you very much.  The

8    Court hereby finds that NatWest Markets PLC has knowingly

9    and voluntarily waived its right to indictment with the

10   assistance of competent counsel, and the waiver, therefore,

11   is accepted.

12            Moving to the charges in the information.

13   Mr. Esposito, have you been given a copy of the

14   government's charging document called the Information that

15   lists the charges being filed against your company?

16            THE DEFENDANT:  I have, Your Honor.

17            THE COURT:  Okay.  Now, for this portion, as with

18   every other portion, I would just ask that you please pay

19   very close attention as the government details these

20   charges because later on, there will be an opportunity when

21   you'll be asked to be put to plea, and during that process,

22   you'll have the opportunity to have this entire charge read

23   into the record again or to waive that additional reading.

24            So at this point, Mr. Francis, would you please

25   be able to speak to the nature of the charges against

1    NatWest Markets PLC and the maximum sentences to which it

2    could be exposed, along with any mandatory minimum

3    sentences that might apply?

4            MR. FRANCIS:  Yes, Your Honor.  The information

5    is a ten-page document.  It charges two counts.  Count One

6    is a violation of Title 18 United States Code, Section

7    1343, charging wire fraud.

8            Count Two is a violation of Title 15 United

9    States Code, Sections 78j(b), and 78ff.  Both of these

10   counts concern spoofing schemes.  Count One and Count Two

11   charge two different spoofing schemes, occurring at

12   different time periods by different employees of NatWest

13   Markets PLC or its subsidiary, the U.S. broker-dealer

14   called NatWest Markets Securities, Inc.

15           In general, spoofing is the fraudulent and

16   manipulative scheme whereby a perpetrator places a large

17   order with the intent to cancel before execution, in order

18   to deceive other market participants about the actual

19   supply and demand in the market, thereby fraudulently

20   affecting prices.

21           Count One charges that between January 2008 and

22   March 2014, a London-based NatWest trader and a Stamford

23   NatWest Markets Securities trader independently engaged in

24   spoofing schemes in connection with a United States

25   Treasury, futures.  Futures are commodities contracts.

Count Two charges that during a three-month period in 2018, two Singapore traders employed by NatWest engaged in the spoofing scheme in connection with United States Treasuries in the secondary market, which is referred to as the cash market.

The statutory maximum penalties for Count One is a fine of -- in this context, because we're dealing with a corporation, there's no terms of imprisonment for any counts possible, obviously.  For Count One, the maximum fine is $1 million or twice the gross gain or twice the gross loss.

Here, the parties have calculated and agreed that twice the gross loss from the wire fraud scheme charged in Count One is the sum of $12,331,826; the maximum term of probation is five years on Count One; the mandatory special assessment is $400; and the parties have agreed upon restitution, which I'll return to in a moment.

Count Two, the maximum statutory penalty is a fine of $25 million, probation of five years, a mandatory special assessment of $400, and restitution.

As detailed in the plea agreement, the parties have calculated restitution from the two schemes, a total amount of $6,761,967.  There are no mandatory minimums for either of these offenses.

THE COURT:  Thank you very much.  May I just ask

1  the final figure with respect to the restitution, the

2  6,761,000, what was that figure again, please?

3          MR. FRANCIS:  Yes, Your Honor.  It's in

4  Paragraph 20(b) of the plea agreement.  And if I wrote it

5  down correctly -- obviously whatever we wrote there, that

6  was vetted very carefully by the lawyers -- I believe that

7  it's $6,761,967.  And if you -- I think Mr. Johnson nodded,

8  so I think I got that right.

9          MR. JOHNSON:  Thank you very much.

10          THE COURT:  And there was -- just to be clear:

11  There was no -- I did not notice any inconsistency; I just

12  missed it when it was said this time.  Thank you very much.

13  All right.  Thank you very much, Mr. Francis.

14          Now, Mr. Esposito, this is where the Court turns

15  its attention back to you with respect to trial rights.  At

16  this point, I am going to review with you the rights to a

17  trial that you would be giving up upon a plea of guilty.

18          I'll go through each one of those rights to make

19  sure that you're aware of those rights before you enter a

20  guilty plea on behalf of NatWest.  Please listen carefully

21  because at the end of this review, I'll ask you if you

22  understand those rights and if you know that you're waiving

23  each and every one of those rights on behalf of the company

24  by entering your guilty plea.

25          The first and most important thing that you must

1  understand is that your company does not have to plead

2  guilty, even if it is guilty.  Under our system of law, the

3  prosecutor has the burden of proving the guilt of a

4  defendant beyond a reasonable doubt.  If the prosecutor is

5  unable to meet this burden, the jury has a duty to find the

6  defendant not guilty.

7          It sometimes happens that a jury returns a

8  verdict of guilty -- I'm sorry.  It sometimes happens that

9  a jury returns a verdict of not guilty, and what the jury

10  is saying in those cases is not that it found the defendant

11  was innocent, but rather that the government failed to meet

12  its burden of proving beyond a reasonable doubt that the

13  defendant was guilty.

14          Do you understand that, sir?

15          THE DEFENDANT:  Yes, I do.

16          THE COURT:  Thank you.  Even if NatWest believes

17  it's guilty, the company has a choice:  It may plead guilty

18  or it may put the government to its proof.  And the way it

19  exercises that option is by you saying "not guilty" when I

20  ask how NatWest pleads.  The company has a right to plead

21  not guilty, and once it pleads not guilty, it has the right

22  to persist in that plea.

23          If NatWest pleads not guilty, it is entitled to a

24  speedy public trial by a jury with the assistance of a

25  lawyer on the charges of the information.

1          Do you understand that?

2          THE DEFENDANT:  Yes, I do.

3          THE COURT:  At the trial, NatWest will be

4    presumed innocent, and the government would have to

5    overcome that presumption and prove your company guilty by

6    each and every element of the crimes, by competent

7    evidence, and beyond a reasonable doubt.

8          NatWest would not have to prove that it is

9    innocent and, if the government were to fail, the jury

10   would have the duty to find NatWest not guilty.

11         Do you understand?

12         THE DEFENDANT:  Yes, I do.

13         THE COURT:  In the course of a trial, the

14   witnesses for the government would have to come to court

15   and testify in the presence of NatWest's representatives,

16   and the company's attorneys would have the following

17   rights:  Cross-examination of the witnesses for the

18   government, objecting to evidence offered by the

19   government, offering evidence on NatWest's behalf, and

20   using subpoenas to obtain attendance of witnesses to

21   testify at trial.

22         Do you understand?

23         THE DEFENDANT:  Yes, I understand.

24         THE COURT:  If NatWest decides to plead guilty, I

25   will have to ask you questions about what the company did

```
 1    in order to determine that there was a factual basis to
 2    find NatWest guilty, and you will have to answer my
 3    questions and admit your company's guilt.
 4            If you plead guilty today on behalf of NatWest
 5    and I accept the plea, you will be giving up your company's
 6    constitutional right to a trial and the other rights that I
 7    have just discussed.  There will be no trial of any kind,
 8    and no right to appeal the conviction; although under some
 9    circumstances, your company or the government may have the
10    right to appeal any sentence I impose.  I will simply enter
11    a finding of guilty based on your guilty plea on behalf of
12    NatWest.
13            Do you understand all of those rights as I've
14    reviewed them with you?
15            THE DEFENDANT:  Yes, I understand them.
16            THE COURT:  Thank you.  Do you have any questions
17    at this time, sir?
18            THE DEFENDANT:  No questions at this time, Your
19    Honor.
20            THE COURT:  And Mr. Esposito, are you authorized
21    to give up NatWest's right to a trial?
22            THE DEFENDANT:  I am authorized, yes.
23            THE COURT:  Are you willing to give up NatWest's
24    right to a trial at this time?
25            THE DEFENDANT:  Yes, I am.
```

```
 1                    THE COURT:  And are you authorized to give up
 2      NatWest's other rights that I've just mentioned?
 3                    THE DEFENDANT:  Yes, I am, Your Honor.
 4                    THE COURT:  Are you willing to give up NatWest's
 5      other rights that I've just discussed with you?
 6                    THE DEFENDANT:  Yes, I am.
 7                    THE COURT:  And finally, are you willing to waive
 8      the rights to an appeal that I've just described on behalf
 9      of your company?
10                    THE DEFENDANT:  Yes, I am.
11                    THE COURT:  All right, thank you.
12                    Now, with respect to potential collateral
13      consequences.  The offenses to which NatWest intends to
14      plead guilty are felony offenses, and if your pleas are
15      accepted, NatWest will be found guilty of those felony
16      offenses.  That may deprive your company of valuable
17      rights, such as the right to work as a contractor or
18      subcontractor on a project that receives federal funds.
19                    And finally, your company's guilty plea may work
20      to its disadvantage if in the future it is found guilty of
21      another crime, because there is a possibility that it could
22      receive a more severe penalty at that time as a result of
23      today's guilty plea and conviction.
24                    So, Mr. Esposito, do you understand those
25      additional consequences of pleading guilty?
```

1              THE DEFENDANT:  Yes, I understand those

2    consequences.

3              THE COURT:  And are you authorized to accept

4    those collateral consequences on behalf of NatWest?

5              THE DEFENDANT:  I am.

6              THE COURT:  Are you willing to accept those --

7    all of those consequences, and still willing to give up

8    NatWest's right to a trial and the other rights that I've

9    just discussed?

10              THE DEFENDANT:  Yes, I am, Your Honor.

11              THE COURT:  Okay, thank you.

12              With respect to the plea agreement, Mr. Francis,

13    it's been mentioned before:  Is there a written plea

14    agreement in this matter today?

15              MR. FRANCIS:  Yes, there is, Your Honor.

16              THE COURT:  And have the defendant's

17    representatives and its counsel seen that as well?

18              MR. FRANCIS:  They have.

19              THE COURT:  Mr. Esposito, have you read the plea

20    agreement carefully?

21              THE DEFENDANT:  Yes, I have, Your Honor.

22              THE COURT:  Have you discussed the plea agreement

23    with counsel?

24              THE DEFENDANT:  I have.

25              THE COURT:  Mr. Francis, at this time, would you

1  please take a moment to outline the terms of that plea

2  agreement?

3              MR. FRANCIS:  Yes, Your Honor.

4              The terms of the plea are set forth in the

5  26-page agreement with its six attachments.  Typically in

6  an individual plea, I would go page by page.  Given the

7  highly negotiated nature of this particular plea and the

8  fact that everyone involved is an attorney, I'm going to

9  stay at a higher level, and I would be more than happy to

10  descend at any particulars that Your Honor thinks

11  necessary.

12             Generally speaking, the plea that is proposed is

13  under Federal Rule of Criminal Procedure, Rule 11(c)(1)(C),

14  and is thus a conditional plea, which is conditioned on the

15  Court's acceptance of the parties' recommended sentencing

16  terms.

17             NatWest Markets PLC is to plead guilty to Count

18  One of wire fraud and Count Two of securities fraud.  The

19  parties have recommended -- agreed upon a recommended

20  sentence for Your Honor, which is a fine of $25.2 million.

21  It is divided between Counts One and Two in Paragraph 20, I

22  believe, (a) of the plea agreement, a term of probation for

23  NatWest Markets PLC of three years, mandatory special

24  assessment of $800, restitution of, as I said before,

25  $6,761,967, and forfeiture of $2,841,368.

1          If I could return just briefly to restitution.

2     Under Paragraph 20(b) of the plea agreement, the parties

3     jointly recommend that Your Honor permit alternative victim

4     notification because the number of victims is so large,

5     they cannot reasonably be identified individually at this

6     time.

7          And further, the government requests 90 days -- a

8     restitution order entered in 90 days, with the idea that

9     the government would submit a proposed order of restitution

10    in advance of that, having had an opportunity to make use

11    of the victim notification, including notification on the

12    Department of Justice website.

13         Continuing on.  The defendant waives certain

14    rights, including those that Your Honor has already

15    specified, and agrees that it pleads guilty because it is

16    guilty.  The main right that the defendant waives or the

17    one that it's -- maybe it's not the main one, but it's the

18    one that's certainly addressed at length is its right to

19    appeal.

20         The plea agreement details the facts and

21    circumstances relevant to the government's decision to

22    enter into this plea on these terms.  That's quite a long

23    paragraph.  That's Paragraph 6.

24         The term of the parties' contractural agreement,

25    which is slightly different than the term of the probation,

1    is three years, beginning after the retention of an

2    independent monitor, which I'll return to.

3              There is an exception to this three-year term of

4    the agreement for cooperation, which lasts the later of

5    either three years or until any -- until all investigations

6    are concluded.  There's also a provision in Paragraph 8 for

7    extension for breach by the defendant.

8              As I said, there's a cooperation obligation which

9    is detailed in Paragraph 10 for the defendant, as well as a

10   self-reporting obligation detailed in Paragraph 11.

11             The first part, the government agrees not to file

12   any additional charges against the defendant, its corporate

13   parent, subsidiaries, affiliates, joint ventures related to

14   the conduct described in the statement of facts, which is

15   Attachment A, or for information already made known to the

16   government.

17             The defendant for its part admits the allegations

18   made in the statement of facts.  The parties have

19   stipulated to a guidelines calculation, which is Paragraph

20   19 of the plea agreement.

21             And the parties have -- as Your Honor sort of

22   alluded to, the parties have agreed to waive a pre-sentence

23   report by the probation office, and I have asked the Court

24   to move to sentencing today, given the nature of its

25   submissions and the plea.

1          Further terms of the plea agreement include an

2    independent compliance monitor, which is set forth in

3    Paragraphs 23 through 27 in Attachment D of the plea

4    agreement.

5          There's also a quite-lengthy section regarding

6    the consequences, the dire consequences, if the defendant

7    were to breach any terms of the plea agreement.

8          And I said there were six attachments.  Briefly:

9    Attachment A is the statement of facts I referred to;

10   Attachment B is the defendant's certificate of corporate

11   resolution, authorizing Mr. Esposito to appear on its

12   behalf; Attachment C are the minimum terms of the

13   defendant's corporate compliance program that it endeavors

14   to undertake or continue undertaking; Attachment D are the

15   duties and authority of the independent compliance monitor

16   that the defendant has agreed to retain; Attachment E is

17   the formal certification for the defendant's CEO and CFO to

18   regularly verify that they have complied with the

19   self-reporting obligation of the plea agreement; and

20   Attachment F is the parties' proposed preliminary

21   forfeiture order, necessary to effectuate the forfeiture

22   that I had talked about earlier.

23          That is my high-level review of the plea

24   agreement, Your Honor, unless you want to know about any

25   particular term.

1          THE COURT:  Thank you very much, Mr. Francis.

2     The Court has reviewed also the 26-page plea agreement.

3     The defense has indicated that they have done so as well.

4          Does the defense wish to seek any additional

5     commentary on the record or to be heard with respect to the

6     alternative information, the restitution order request, or

7     any of the other comments made by the government at this

8     time?

9          MR. JOHNSON:  I don't believe so, Your Honor.  I

10    mean, as AUSA Francis indicated, the agreement was highly

11    negotiated.  We had a fair amount of time to go over it and

12    to discuss the details.

13         I think maybe a few of the details that the

14    government highlighted might not be a hundred percent

15    aligned with each of the provisions, but I don't think

16    there's anything material, and we understand the agreement.

17         And subject to Mr. Esposito, any questions he has

18    at this point, we're prepared to move forward.

19         THE DEFENDANT:  I have no further questions.

20         THE COURT:  Okay.  Were there any corrections

21    that you wish to make at this time based on the comments by

22    Mr. Francis?

23         MR. JOHNSON:  I mean, everything, I think, is

24    reflected in the agreement itself, Your Honor.  So I don't

25    think that's necessary.  Thank you.

1          THE COURT:  All right.  Before the Court moves on

2    to discuss sentencing procedure, is there anything further

3    from either party at this time?

4          MR. FRANCIS:  Nothing from the government, Your

5    Honor.

6          MR. JOHNSON:  No, Your Honor.

7          MR. PERRY:  Your Honor, may I just clarify for

8    the record:  Is the Court granting the government's request

9    and motion for alternative victim notification procedures?

10          THE COURT:  Yes.  Having heard no objection and

11    having heard the reasons, therefore, the Court does grant

12    the government's motion with respect to alternative victim

13    notification.  Thank you.

14          MR. PERRY:  Thank you, Your Honor.

15          THE COURT:  And the Court similarly grants a

16    request to adopt the restitution procedure requested by the

17    parties.

18          MR. PERRY:  Thank you again.

19          THE COURT:  Thank you very much.  All right.

20    Anything further with respect to the plea agreement before

21    the Court proceeds?

22          MR. JOHNSON:  No, Your Honor.

23          MR. FRANCIS:  No.

24          THE COURT:  All right, thank you.  With respect

25    to sentencing procedures, at this point, the Court will

1  describe how sentencing will work.

2          The plea agreement that NatWest is asking to

3  execute is brought pursuant to Rule 11(c)(1)(C) under the

4  Federal Rules of Criminal Procedure.  This rule allows an

5  attorney for the government to agree to a certain sentence

6  or sentencing range as the appropriate disposition of the

7  case.  Importantly, the recommendation or request contained

8  within the plea agreement binds the Court after it accepts

9  the plea agreement.

10          Ordinarily, a probation officer would draft a

11  comprehensive pre-sentence report to aid the Court in

12  sentencing the defendant.  In this case, NatWest has waived

13  its right to a pre-sentence investigation report, and has

14  instead agreed to the government's sentencing

15  recommendation.

16          Therefore, if you wish to plead guilty on behalf

17  of NatWest and if the Court accepts the plea as presented

18  today, the Court will have to sentence the company to the

19  terms outlined in that plea agreement.

20          Do you understand that, Mr. Esposito?

21          THE DEFENDANT:  I do, Your Honor.

22          THE COURT:  All right.  And have you reviewed

23  with NatWest's counsel the maximum penalties in the

24  company's case and how the sentencing guidelines might

25  apply to the company?

1              THE DEFENDANT:  Yes, I've reviewed those with

2     counsel.

3              THE COURT:  All right, thank you.  And without

4     telling the Court exactly what counsel has said, would you

5     please be able to tell me yes or no, whether your company's

6     attorney has given you any estimate as to what your

7     company's sentence may be under the guidelines?

8              THE DEFENDANT:  Yes.  Counsel has walked through

9     what the potential sentences could be with me.

10             THE COURT:  Thank you.

11             Now, Mr. Johnson, have you discussed with your

12    client the maximum penalties in this case, any mandatory

13    minimum penalties that could apply under the operation of

14    the sentencing guidelines?

15             MR. JOHNSON:  I have, Your Honor.

16             THE COURT:  Have you given its representatives an

17    estimate as to what its sentence might be under the

18    guidelines?

19             MR. JOHNSON:  I have, Your Honor.

20             THE COURT:  And have you informed your client

21    that the Court would be bound by the sentencing

22    recommendation contained within the plea agreement that was

23    just discussed?

24             MR. JOHNSON:  I have.

25             THE COURT:  All right, thank you.

1          Mr. Esposito, at this point, we're discussing the

2     maximum penalties in your company's case.  If it does plead

3     guilty, if you do plead guilty on behalf of your company as

4     is previously stated -- I'm sorry for some of this being

5     repetitive -- for Count One of wire fraud, NatWest is being

6     sentenced as follows:  A maximum fine of twice the gross

7     pecuniary gain or gross pecuniary loss resulting from the

8     commission of the offense, which, in this case, has been

9     stated by the government, and the parties have indicated is

10    $12,331,826.

11          Do you understand that, sir?

12          THE DEFENDANT:  Yes, I do.

13          THE COURT:  A maximum probation period of five

14    years; and third, a special assessment of $400.

15          Do you understand that, sir?

16          THE DEFENDANT:  I do.

17          THE COURT:  With respect to Count Two, securities

18    fraud, if you plead guilty on behalf of your company,

19    NatWest may be sentenced to a maximum fine of up to

20    $25 million, a maximum term of probation of five years, and

21    a special assessment of $400.

22          Do you understand that, sir?

23          THE DEFENDANT:  I do, Your Honor.

24          THE COURT:  And the restitution was discussed

25    previously as well, the terms, including the $6,761,967

 1   amount.

 2          Do you understand that as well, sir?

 3          THE DEFENDANT:  I do.

 4          THE COURT:  All right.  With respect to the

 5   recommended sentence, Mr. Esposito, at this point, the

 6   Court will be discussing the recommendation offered by the

 7   government.

 8          Have you been able to read the sentencing

 9   recommendation in the plea agreement?

10          THE DEFENDANT:  I have, Your Honor.

11          THE COURT:  Have you had the chance to discuss

12   that recommendation with counsel?

13          THE DEFENDANT:  Yes, I have.

14          THE COURT:  The government has proposed the

15   following sentencing recommendation under Count One for

16   wire fraud in violation of 18 U.S. Code, Section 1343:  A

17   criminal fine of $12,331,826, criminal forfeiture of

18   $2,245,314, a mandatory special assessment of $400.

19          Under Count Two for securities fraud, violation

20   of 15 U.S. Code, Sections 78j(b) and 78ff:  A criminal fine

21   of $12,868,174, criminal forfeiture of $596,054, and the

22   mandatory special assessment of $400.

23          The total criminal fine would amount to

24   $25,200,000, and the total criminal forfeiture would be

25   $2,841,368.  The government also seeks restitution in the

1  amount of $6,761,967, and a probationary term of three

2  years.

3          Under the terms of the probation, NatWest must

4  continue implementing a compliance and ethics program,

5  maintain an independent compliance monitor, and cooperate

6  fully with the Department of Justice and the U.S.

7  Attorney's Office in any and all matters of the

8  investigation into NatWest or any related party such as its

9  parent company, affiliates, officers, directors, employees,

10  agents, or consultants.

11          Do you understand the sentencing recommendation

12  proposed by the government?

13          THE DEFENDANT:  I do.

14          THE COURT:  And do you understand that if you

15  plead guilty on behalf of NatWest and if the Court accepts

16  the plea agreement, then the Court will be bound by the

17  sentencing recommendation?

18          THE DEFENDANT:  Yes, I do, Your Honor.

19          THE COURT:  Thank you, sir.

20          With respect to the waiver of appellate rights,

21  Mr. Francis, have you disclosed to the Court any and all

22  provisions concerning a waiver of appeal rights in the plea

23  agreement?

24          MR. FRANCIS:  We have, Your Honor.  There are no

25  terms of the parties' agreement that are not documented in

1    the plea agreement.

2              THE COURT:  Thank you very much.  And would you

3    like to describe any -- the status of any of NatWest's

4    right to appeal, any other waivers that are contained in

5    the plea agreement?

6              MR. FRANCIS:  Broadly, NatWest, if the Court were

7    to accept -- at sentencing were to accept the parties'

8    plea, the recommended plea by the -- sorry -- the

9    recommended terms of sentencing by the party, then NatWest

10   Markets PLC waives the right to appeal its conviction, its

11   sentence, and waives the right to collaterally attack all

12   aspects of this, I believe with the exception of

13   ineffective assistance of counsel.  I believe that right

14   constitutionally cannot be waived.

15             Barring that, it is a broad waiver of appellate

16   rights.

17             THE COURT:  Thank you very much.

18             Mr. Johnson, do you have anything to add to those

19   comments?

20             MR. JOHNSON:  No, Your Honor.

21             THE COURT:  Thank you very much.

22             Mr. Esposito, do you understand NatWest's rights

23   to appeal as mentioned?

24             THE DEFENDANT:  I do.

25             THE COURT:  Have they been fully explained to

1  you, sir?

2          THE DEFENDANT:  They have, Your Honor.

3          THE COURT:  And do you understand the section of

4  the plea agreement that concerns NatWest's waiver of appeal

5  rights?

6          THE DEFENDANT:  I do, Your Honor.

7          THE COURT:  Mr. Esposito, in the plea agreement,

8  NatWest voluntarily, knowingly, and intelligently agrees to

9  waive its rights under Federal Rules of Criminal Procedure

10  11(f) and the Federal Rule of Evidence 410.  This means

11  that any statements made or attributed to NatWest in the

12  course of its plea discussions with the government are

13  admissible against the company for any purpose in a federal

14  criminal proceeding.  This is true, even if NatWest

15  withdraws its guilty plea in the future.

16          Do you understand that, sir?

17          THE DEFENDANT:  I do.

18          THE COURT:  Thank you very much.  With respect to

19  the elements of the offense, the Court will address those.

20          By "the elements," the Court is referring to the

21  facts that the government would have to prove beyond a

22  reasonable doubt before NatWest to be convicted were it to

23  have pled not guilty instead of proceeding to a trial --

24  I'm sorry -- were to have pled not guilty and decided to

25  elect to proceed with a trial.

1          I want you to bear in mind that the government

2     would have to prove each of those facts by persuading a

3     jury of 12 persons that those facts were true beyond a

4     reasonable doubt.

5          Do you understand that, sir?

6          THE DEFENDANT:  I do.

7          THE COURT:  To prove that NatWest is guilty in

8     Count One of wire fraud in violation of 18 U.S. Code,

9     Section 1343, the following essential elements must be

10    satisfied:  One, that there was a scheme or artifice to

11    defraud or to obtain money and property by materially false

12    and fraudulent pretenses, representations, or promises;

13    two, NatWest knowingly participated in a scheme or artifice

14    to defraud with knowledge of its fraudulent nature, and

15    with specific intent to defraud; and third, in execution of

16    that scheme, that NatWest used or caused the use of

17    interstate wires.

18          To prove that NatWest is guilty in Count Two of

19    securities fraud in violation of 15 U.S. Code, Section

20    78j(b) and Section 78ff, the following essential elements

21    must be satisfied:  One, that NatWest employed a device,

22    scheme, or artifice to defraud, made an untrue statement of

23    material fact, or engaged in an act, practice, or course of

24    business that operated for fraud or deceit upon a purchaser

25    or seller; two, that NatWest did so in connection with the

1  purchase or sale of securities; three, that NatWest made

2  use of or caused the use of any means or instrumentality of

3  interstate commerce or of the mails or of any facility of

4  any national securities exchange in furtherance of the

5  fraudulent scheme; and four, that NatWest acted willfully,

6  knowingly, and with the intent to defraud.

7          So, Mr. Esposito, do you understand each of those

8  elements of the offenses as I just described them?

9          THE DEFENDANT:  Yes, Your Honor, and each of the

10  elements.

11          THE COURT:  Thank you so much.  With respect to

12  the defendant's guilty conduct, Mr. Esposito, I am now

13  going to turn to the actual conduct that brings you here on

14  behalf of NatWest today.  I'm going to ask Mr. Francis to

15  please summarize what your company did that makes it guilty

16  of the charges to which you intend to plead guilty on its

17  behalf, and also to summarize the government's evidence as

18  to the charges against your company.

19          So please, again, listen carefully, because when

20  the prosecutor is finished, I'll be asking you whether you

21  agree with the government's summary of what your company

22  did.

23          So would you please, Mr. Francis, do so at this

24  time?

25          MR. FRANCIS:  Thank you, your Honor.  If put to

its proof at trial, the government would prove all of the
elements of the Count One and Count Two beyond a reasonable
doubt, using evidence that includes, but is not limited to:
Electronic communications and trade data regarding trades
made by employees at NatWest Markets PLC and its U.S.
broker-dealer, NatWest Markets Securities, Inc.  It would
also call witnesses, including government agents,
potentially expert witnesses, and market participants.

They would -- using this evidence, the government
would prove beyond a reasonable doubt, in essence, the
allegations alleged in the statement of facts, which is
Attachment A to the plea agreement, which, in sum, are that
between January 2008 and May 2014 and then separately
during a three-month period in 2018, employees of NatWest
Markets PLC and its subsidiary engaged in a spoofing scheme
with the intent to -- with the willful intent to manipulate
the market and profit, in part, NatWest Markets PLC.  They
did so acting in the scope of their employment and in -- at
least in some instances, made use of interstate wires, or
in other instances made use of facilities of interstate
commerce in the exchange.

All of this conduct -- a portion of this conduct
took place in the District of Connecticut, mainly Stamford,
Connecticut.  I believe the -- given the statement of
facts, and it was -- I'll be forthright:  That's a

1  negotiated document.

2           I don't want to get too -- I don't want to get

3  out over my skis and say something that Mr. Johnson will

4  take issue with.  And so, I think I would refer to the

5  statement of facts, Your Honor, unless you have any

6  questions.

7           THE COURT:  Okay, I appreciate that.  I

8  appreciate the reasons for the government's position.

9  Thank you.

10          MR. FRANCIS:  Thank you.

11          THE COURT:  All right.  So, Mr. Esposito, have

12  you had a chance to review the statement of facts?

13          THE DEFENDANT:  I have, Your Honor, yes.

14          THE COURT:  Thank you.  And you've also heard

15  what Mr. Francis -- how Mr. Francis has described them, but

16  you also have the written version of the statement of facts

17  that goes into great detail.

18          Based on the oral commentary today and based on

19  the written statement of facts in Attachment A to the plea

20  agreement, do you agree with the government's summary of

21  what NatWest did?

22          THE DEFENDANT:  I agree with the statement of

23  facts as, you know, as described in the written document.

24          THE COURT:  Okay.  Is there anything that the

25  government has said today or in the written statement of

1    fact with which you disagree at this point?

2             THE DEFENDANT:  I think the only thing of

3    substance is -- and I think, you know, Mr. Francis

4    corrected it -- was in terms of where the conduct took

5    place.  I'm not sure if the conduct actually took place in

6    Stamford versus Greenwich, Connecticut.  So that's why it's

7    referred to the written statement of facts.

8             THE COURT:  And based on that commentary,

9    Mr. Francis, does the government wish to be heard?

10            MR. FRANCIS:  No, Your Honor.  As long as it's

11   within the District of Connecticut, then it is satisfied.

12   And so, I'm content with Mr. Esposito's admission.

13            THE COURT:  As is the Court, given the -- as the

14   government pointed out, still being within, you know, the

15   District of Connecticut.  Thank you.

16            Okay.  So, Mr. Esposito, is there anything else

17   that you'd like to say about the government's summary of

18   what NatWest did in this case?

19            THE DEFENDANT:  No, Your Honor.

20            THE COURT:  Thank you.  And Mr. Johnson, anything

21   else from any counsel for the defense as to anything to add

22   to this portion of the discussion?

23            MR. JOHNSON:  No, Your Honor.

24            THE COURT:  Thank you very much.  All right.  At

25   this point, the Court will be asking about some of the

1    illegal acts that the company engaged in.

2          Mr. Esposito, we have to address at this point

3    the company's conduct.  Does the written plea agreement and

4    the other matters that we've discussed today that's

5    outlined by the Assistant U.S. Attorney, has that fully and

6    accurately reflected your understanding of the agreement

7    that NatWest wishes to enter into with the government?

8          THE DEFENDANT:  Yes, it does, Your Honor.

9          THE COURT:  Are you aware that NatWest's counsel

10   and the government have discussed the agreement to plead

11   guilty?

12         THE DEFENDANT:  Yes, I am.

13         THE COURT:  Is NatWest's willingness to plead

14   guilty today based on any prior discussions between the

15   company's lawyer and the prosecutor?

16         THE DEFENDANT:  It's based on the written

17   agreement, plea agreement, and the information that we've

18   negotiated.

19         THE COURT:  Other than the promises contained

20   within that written plea agreement, has anyone made any

21   promises that are causing NatWest or you on behalf of

22   NatWest to enter this guilty plea today?

23         THE DEFENDANT:  No, Your Honor.

24         THE COURT:  Has anyone made any threats against

25   you or is anyone in any way forcing you to plead guilty or

1   otherwise coercing you to plead guilty on behalf of your

2   company, sir?

3              THE DEFENDANT:  No, Your Honor.

4              THE COURT:  Are you pleading guilty today because

5   that is what NatWest and yourself freely chooses to do, and

6   because your company is guilty?

7              THE DEFENDANT:  Yes, Your Honor.

8              THE COURT:  Are you ready to sign the written

9   plea agreement at this time?

10             THE DEFENDANT:  I am, Your Honor.

11             THE COURT:  Thank you.  Do you have that plea

12   agreement in front of you, sir?

13             THE DEFENDANT:  I do, Your Honor.

14             THE COURT:  Okay.  At this time, please go ahead

15   and sign it.

16             THE DEFENDANT:  I'll go ahead and date it as

17   well.

18             THE COURT:  Great.  Thank you, sir.  And that's

19   set -- at what page are you signing?

20             THE DEFENDANT:  That's on page 26 of the plea

21   agreement.

22             Okay.  I've fully executed the document, Your

23   Honor.

24             THE COURT:  All right.  Would you please just

25   show us?  I know it's -- because we're all on video here.

```
 1              THE DEFENDANT:  My signature is right here

 2    (indicating).

 3              THE COURT:  All right.  The Court could see and

 4    did see the document being signed.  The document has been

 5    shown to everybody.

 6              And Mr. Francis, have you already signed that

 7    plea agreement?

 8              MR. FRANCIS:  Yes.  Mr. Perry and I signed and

 9    sent it over to Mr. Johnson, and it looked, from what I

10    could see on the screen, that Mr. Johnson signed and then

11    provided it to Mr. Esposito.  So when he signed, it is now

12    fully executed.

13              THE DEFENDANT:  That's correct.  What I have in

14    front of me is a fully executed page 26, containing all of

15    the required signatures.

16              THE COURT:  And the Court -- now that you held it

17    up, the Court notes for the record that it also can see all

18    of those signatures.  And that's going to be forwarded to

19    the courtroom deputy after this hearing, within the next

20    24 hours, is that right?

21              MR. JOHNSON:  We'll do that, Your Honor, yes.

22    We'll get a scan of the signature page, and we'll make sure

23    it goes around to all the parties and the Court.

24              THE COURT:  Thank you so much.  All right.

25              On that issue, since we are by videoconference,
```

1    does anyone wish to be heard at all on that issue at this

2    time?

3              MR. FRANCIS:  Your Honor, I just want to clarify.

4              There is Attachment F regarding the preliminary

5    order of forfeiture.  While it's not necessary that

6    Mr. Esposito do it on the record during this, I would ask

7    that when the defense submits to the courtroom deputy a

8    fully executed version, they include a signed version of

9    that as well, so that there's one document for Your Honor.

10             THE COURT:  Any objection to that?

11             MR. JOHNSON:  No.  We'll do that, Your Honor.

12             THE COURT:  Great, thank you.  All right.

13             Now, at this point, we will be moving over to the

14   plea and findings.  Mr. Esposito, this is the point at

15   which the Court will be asking for entry of your plea on

16   behalf of NatWest.  I'll have the charges read to you,

17   unless -- again, this is the portion at which you're also

18   free to request a waiver of the detailed reading of the

19   charges.

20             Having received these documents in advance, being

21   an attorney yourself, having had time to discuss the

22   charges, do you wish to have your charges read on the

23   record, which is totally fine, or would you prefer to waive

24   the reading of the charges on behalf of your company?

25             THE DEFENDANT:  I'm comfortable with waiving the

 1  reading of the charges, Your Honor.

 2          THE COURT:  All right, thank you.

 3          Anyone else want to be heard on that waiver at

 4  this time?

 5          MR. FRANCIS:  No, Your Honor.

 6          MR. JOHNSON:  No, Your Honor.

 7          THE COURT:  Thank you.  Thank you very much.  All

 8  right.

 9          Ms. Perez, at this point, may I ask that the

10  defendant be put to plea?

11          THE COURTROOM DEPUTY:  In the United States of

12  America versus NatWest Markets PLC, Criminal Number

13  3:21-cr-187-OAW, as to Count One of the information,

14  charging you with the violation of Title 18 United States

15  Code, Section 1343, what is your plea?

16          THE DEFENDANT:  NatWest Markets pleads guilty.

17          THE COURTROOM DEPUTY:  As to Count Two of the

18  information, charging you with the violation of Title 15,

19  United States Code, Sections 78j(b) and 78ff, what is your

20  plea?

21          THE DEFENDANT:  NatWest Markets PLC pleads

22  guilty.

23          THE COURTROOM DEPUTY:  Your Honor, the defendant

24  pleads guilty to Counts One and Two of the information.

25          THE COURT:  Thank you very much.

1            THE COURTROOM DEPUTY:  You're welcome.

2            THE COURT:  All right.  On the basis of the plea

3    agreement and the accompanying agreements attached to the

4    agreement, the answers given by NatWest's representative

5    under oath on the record and in the presence of its counsel

6    to the questions of the Court, the remarks of defense

7    counsel, and the remarks of the Assistant United States

8    Attorney, it is the finding of the Court in the case of the

9    United States versus NatWest Markets PLC that the defendant

10   is fully aware of the nature of the charges and the

11   consequences of the plea, and that the plea of guilty is a

12   knowing and voluntary plea, supported by an independent

13   basis in fact, containing each of the essential elements of

14   the offenses.

15            The Court finds that the defendant knows of its

16   rights to plead not guilty, the right to a trial and

17   related rights, and that the defendant is knowingly giving

18   up these rights by its pleas of guilty.

19            The Court further finds that the defendant knows

20   the maximum possible sentence, including monetary fines,

21   forfeiture, restitution, and payment of special assessment,

22   that the defendant knows of the Court's obligation to

23   follow the sentencing recommendation outlined in the plea

24   agreement, and accepts the terms of any plea agreement

25   provision, waiving defendant's right to appeal or to

1   collaterally attack defendant's sentence.

2           The plea as to Count One and as to Count Two of

3   the information is therefore accepted, and the defendant is

4   now found guilty of those offenses.  Accordingly, findings

5   of guilty shall enter.

6           Now, at this point, the Court would propose a

7   brief recess before a position of sentencing, unless anyone

8   wants to be heard otherwise?

9           MR. FRANCIS:  No, Your Honor.

10          MR. JOHNSON:  No, Your Honor.

11          THE COURT:  All right.  I see it's exactly

12  11:00 o'clock.  We can take a brief recess until 11:15.

13          Ms. Perez, logistically speaking, would the

14  parties remain connected and just mute and shut off their

15  camera at this time?

16          THE COURTROOM DEPUTY:  Yes.  I will disconnect

17  the courtroom, and I will ask the parties to stay on the

18  Zoom meeting.  When we resume after our recess, I will

19  reconnect Judge Williams' Zoom meeting.

20          THE COURT:  Thank you all for appearing.  The

21  Court stands in a brief recess until 11:15.

22          (A recess was taken, 11:00 a.m. to 11:17 a.m.)

23          THE COURT:  And, again, thank you all for your

24  patience and cooperation.  At this point, the Court is

25  prepared to go forward with sentencing.  And so, I'll start

1   with counsel.

2          Does either counsel have any questions or have

3   any objections with regard to the sentencing agreement that

4   was provided?

5          MR. FRANCIS:  Nothing from the government, Your

6   Honor.

7          MR. JOHNSON:  No, Your Honor.

8          THE COURT:  Thank you both.

9          With respect to the factual statements, does

10  either counsel have any questions or objections with regard

11  to the statement of facts, which is Attachment A to the

12  plea agreement?

13         MR. FRANCIS:  No, Your Honor.

14         MR. JOHNSON:  No, Your Honor.

15         THE COURT:  Thank you both.

16         There being no objections to factual statements

17  contained in the plea agreement, the Court adopts

18  Attachment A to the plea agreement as its finding of fact

19  in this matter.

20         Additionally, the Court is satisfied as to the

21  plea agreements in this case, as it adequately reflects the

22  seriousness of the actual offense and behavior and as it

23  will not undermine the purposes of sentencing.

24         With respect to maximum penalties, Mr. Esposito,

25  as you know, the defendant faces the following maximum

1   penalties under Count One, wire fraud, in violation of 18

2   U.S. Code, Section 1343:  A maximum fine of twice the gross

3   pecuniary gain or gross pecuniary loss resulting from the

4   commission of the offense, which the parties have indicated

5   is $12,331,826 in this case, a maximum probation period of

6   five years, special assessment of $400.

7        And under Count Two, securities fraud, in

8   violation of 15, U.S. Code, Sections 78j(b) and 78ff:  A

9   maximum fine of up to $25 million, a maximum period of

10  probation of five years, and a special assessment of $400.

11       Mr. Francis, is the Court's statement of the

12  maximum sentence in this case accurate?

13       MR. FRANCIS:  It is, Your Honor.

14       THE COURT:  Thank you.

15       Mr. Johnson, is that your understanding of the

16  maximum sentence as well?

17       MR. JOHNSON:  Yes, Your Honor.

18       THE COURT:  Thank you both.  With respect to

19  sentencing guidelines as outlined in the plea agreement,

20  the sentencing guidelines suggest that the base offense

21  level is 29.  The base offense level is calculated by

22  reference to the Federal Sentencing Guidelines for basic

23  property offenses, including fraud, which is the relevant

24  offense in this case.

25       The following factors all contributed to the

basis offense score:  The statutory maximum term of imprisonment is more than 20 years, there is a loss of more than $3,500,000 with ten or more victims, and a substantial part of the fraudulent scheme was committed from outside of the United States, via sophisticated means.

The sentencing guidelines indicate that the base fine for a base offense level of 29 is $15 million.  The base offense level is combined with the defendant's culpability score to determine a minimum and maximum fine range.

In this case, the defendant's culpability score is 7.  This score is derived from a base culpability score given to all criminal defendants, as well as the size of the defendant's organization, the commission of the offense within five years of a prior criminal adjudication, and, finally, defendant's recognition of responsibility.

With a base offense score of 29 and a culpability score of 7, the minimum fine is $21 million and the maximum fine is $42 million.

Mr. Francis, is the Court's statement regarding the sentencing guideline provisions and calculations in this case accurate?

MR. FRANCIS:  It is.

THE COURT:  Mr. Johnson, do you agree?

MR. JOHNSON:  Yes.

```
 1              THE COURT:  Thank you.  Mr. Johnson, before I
 2   proceed to sentence your client, I would like to give you
 3   the opportunity to make any statements that you wish to
 4   make upon the defendant's behalf.  And, of course, I'll
 5   also permit Mr. Esposito to add any statements that he
 6   would like to make on behalf of NatWest.
 7              So, Mr. Johnson, the floor is yours.
 8              MR. JOHNSON:  No statement at this time, Your
 9   Honor.  Thank you.
10              THE COURT:  Thank you very much.  And does
11   Mr. Esposito have anything that he wishes to add at this
12   time?
13              THE DEFENDANT:  Nothing further at this time,
14   Your Honor.
15              THE COURT:  Thank you both.
16              Mr. Francis, any final remarks from the
17   government at this time?
18              MR. FRANCIS:  Your Honor, I would just say that
19   based on the parties' plea agreement, and particularly the
20   statement of facts and the considerations that are detailed
21   in Paragraph 6, the government believes that the parties'
22   recommended sentence is sufficient, but not greater than
23   necessary, to effectuate the purposes of Section 3553 and
24   3572 regarding imposition of a fine.
25              Nothing further.
```

1            THE COURT:  Thank you very much to the government

2    and to both parties for your meeting of the minds and

3    articulation as to how you arrived at this agreement.

4            At this point, the Court is prepared to turn to

5    the defendant's sentencing.  Ordinarily, the Court would

6    list the factors that it takes into consideration in

7    determining a particular sentence that's being imposed.

8    However, in this case, the parties have reached an

9    agreement on their own, which the Court must adopt pursuant

10   to Rule 11.

11           Therefore, the Court adopts Paragraph 6 of the

12   plea agreement, as well as 18 U.S. Code, Section 3553(a),

13   which the parties have indicated contain the appropriate

14   factors supporting the agreed-upon sentence recommendation.

15           Mr. Esposito is the authorized representative of

16   NatWest Markets PLC.  The Court hereby sentences the

17   defendant under Count One for wire fraud in violation of 18

18   U.S. Code, Section 1343, a criminal fine of $12,331,826,

19   criminal forfeiture of $2,245,314, and a mandatory special

20   assessment of $400.

21           As to Count Two for securities fraud in violation

22   of 15 U.S. Code, Sections 78j(b) and 78ff, a criminal fine

23   of $12,868,174, criminal forfeiture of $596,054, and a

24   mandatory special assessment of $400.

25           The total criminal fine is $25,200,000, which

must be paid in full at the time of the entry of judgment.
The total criminal forfeiture is $2,841,368, and must be
paid in full to the United States in accordance with the
provisions contained in the preliminary forfeiture order,
which is Attachment F of the plea agreement.

The Court hereby sentences the defendant to pay
an additional $6,761,967 in restitution, given that the
number of victims in this matter is so large to make
individual victim notification impractical.

The Department of Justice and the U.S. Attorney's
Office are permitted to publish notifications online which
contain instructions for the submission of restitution
claims and victim impact statements.

Lastly, the defendant is sentenced to a period of
probation that shall be the longer of either three years or
the completion of all investigations and prosecutions
arising out of the defendant's conduct, as detailed by the
parties in Paragraphs 7 and 10 of the plea agreement.

Specifically, the defendant must continue
implementing a compliance and ethics program, retain an
independent compliance monitor, and to cooperate fully with
the Department of Justice and the U.S. Attorney's Office in
all matters of the investigation relating to the defendant
and related parties in any and all matters.

Mr. Francis and Mr. Johnson, at this time, does

1    either of you know of any reason that the sentence should

2    not be imposed as stated?

3            MR. FRANCIS:  Your Honor, it is a legal sentence,

4    but if I may be heard?  I think there are maybe one or two

5    things that I just want to clarify.  And it is within Your

6    Honor's discretion -- as I said, this is a legal sentence.

7    Your Honor can impose it.

8            There are two ways that I notice that I believe

9    that is at variance with what the parties' recommended

10   sentence was.  In which case, I believe Your Honor, under

11   11(c)(1)(C), would have to give the defense then -- they

12   would have the ability to withdraw their plea.

13           So the first and least meaningful one is that

14   under Paragraph 20(a) of the plea agreement, restitution is

15   payable, the parties have agreed, within ten business days

16   of the entry of judgment -- I'm sorry, I said

17   "restitution."

18           I meant the fine is payable within ten business

19   days of the entry of judgment.  I understand that to be for

20   sort of logistical reasons so the defendant has an

21   opportunity -- I think NatWest Markets is good for the

22   money.  And so, I think that's a minor thing.

23           I think a larger thing is that the term of

24   probation agreed to by the parties is three years.  There

25   is a separate cooperation agreement between the parties

1   that -- and that cooperation period can extend until all

2   investigations are complete.  And at this point, that can

3   be an indefinite period of time.  We can't say exactly how

4   long it would be.

5           But in Your Honor's sentence, the parties

6   recommend that the term of probation end after three years.

7           THE COURT:  Okay.  Thank you very much.  That was

8   a last-minute change by the Court, an adjustment based on

9   the commentary today.  The Court apologizes for that.

10          The definite sentence of three years of probation

11  certainly is preferable, with reference by the government

12  to the applicable portion of the agreement.

13          Starting with the ten business days within which

14  the rest of the fine may be paid, I'm guessing there will

15  be no objections from the defense as to that modification?

16          MR. JOHNSON:  No.  That was our agreement, Your

17  Honor.  And so, I was going to clarify those two same

18  points AUSA Francis did.

19          THE COURT:  Okay.  So same thing with respect to

20  the three years of probation?

21          MR. JOHNSON:  Correct.

22          THE COURT:  Okay, thank you.  My apologies.  I

23  did not intend to muddy the waters.  I apologize.  The

24  Court vacates the previous recitation in correcting the

25  sentence to align with the intent of the parties.

1          And so, with respect to total fine, it does

2     remain $25,200,000.  Whereas the Court previously indicated

3     that such fine was payable at the time of entry of

4     judgment, the Court makes a correction and orders that the

5     fine be paid within ten business days from the entry of

6     judgment.

7          So, again, the total criminal fine is

8     $25,200,000.  It must be paid within ten business days of

9     the entry of judgment.

10          With respect to the term of probation, whereas

11    the Court previously indicated that it would be the longer

12    of either three years or upon completion of all

13    investigations, prosecutions, the Court vacates that

14    additional language and instead corrects the period of

15    probation.  The Court imposes a three-year term of

16    probation.

17          Again, the defendant is sentenced to a period of

18    probation of three years.  So, again, the Court indicated

19    "Lastly, the defendant is sentenced to a period of

20    probation."  The Court corrects that language to say,

21    "Lastly, the defendant is sentenced to a three-year period

22    of probation."  So this is a three-year term of probation.

23    And the parties have discussed in detail, and have provided

24    in detail the conditions of that probation within the plea

25    agreement.

1              Does either party wish to be heard with respect

2    to those corrections?

3              MR. FRANCIS:  No, Your Honor.

4              MR. JOHNSON:  No, Your Honor.

5              THE COURT:  My apologies, and my apologies to

6    Madam Court Reporter as well for that correction.

7              So at this time, Mr. Francis, Mr. Johnson, any

8    other reason that the sentence should not be imposed as

9    stated?

10             MR. FRANCIS:  No, Your Honor.

11             MR. JOHNSON:  No, Your Honor.

12             THE COURT:  Thank you.  And thank you again for

13   that important correction.

14             The judgment of the Court will be prepared for

15   the Court's signature.  It will be prepared by the clerk's

16   office for signature by the Court.

17             Mr. Esposito, the Court also informs you that by

18   accepting the sentence as set forth in the plea agreement,

19   you have waived the defendant's right to appeal its

20   convictions of the sentence.

21             Do you understand that, sir?

22             THE DEFENDANT:  I do, Your Honor.

23             THE COURT:  Are there any other matters by any

24   party to be addressed at this time?

25             MR. JOHNSON:  No, Your Honor, other than the

1   government will endeavor to get a form order of

2   restitution -- or a proposed order of restitution that the

3   defendant will have a chance to look over.

4          We'll attempt to do it within 60 days.  If we

5   need another few days at the end there, we won't -- we will

6   give Your Honor plenty of time with it so that we can hit

7   the 90-day deadline.

8          THE COURT:  Very well.  Thank you very much.

9          MR. FRANCIS:  Thank you.

10          THE COURT:  Anything further from anybody else?

11          MR. JOHNSON:  Not from the defense.  Thank you,

12   Your Honor.

13          THE COURT:  Thank you all again for working

14   together so cooperatively and with all of the changes.  I

15   hope you all and your families stay safe and healthy

16   throughout the holiday season, for any travels that you

17   have.

18          Thank you again.  Thank you again to Ms. Perez

19   and Ms. Mamillapalli.  I appreciate your efforts as well.

20   Thank you very much.  The Court stands adjourned.

21          (Proceedings concluded, 11:34 a.m.)

22

23

24

25

```
1                          CERTIFICATE

2

3         RE: USA v. NATWEST MARKETS, PLC

4            Case No. 3:21-cr-0187-OAW-1

5

6         I, Cassie Zayas, RPR, Official Court Reporter for

7    the United States District Court, District of Connecticut,

8    do hereby certify that the foregoing 57 pages are a true

9    and accurate transcription of my stenographic notes taken

10   in the aforementioned matter to the best of my skill and

11   ability.

12

13            _ /s/   CASSIE ZAYAS_____

14            Official Court Reporter
              United States District Court
15            141 Church Street
              New Haven, CT 06510
16

17

18

19

20

21

22

23

24

25
```